J. LELAND HYLTON, Appellant, *v.* W. A. REIN-
KEN, as Receiver of and for the Properties
Involved in the Mortgage of J. LELAND HYL-
TON and Others to Henderson Banking Com-
pany Mortgage Corporation, a Corporation,
and to Reconstruction Finance Corporation, a
Corporation, Respondent.

No. 3152

January 23, 1941.                    109 P.(2d) 271.

*Milton B. Badt,* for Appellant.

*Morley Griswold* and *Milton J. Reinhart,* and *McNamara & Robbins,* for Respondent.

**OPINION**

By the Court, ORR, J.:

On the 31st day of July 1934 W. A. Reinken, a defendant in the court below and a respondent here, who will be hereinafter referred to as defendant, was appointed receiver by the Fourth judicial district court of the State of Nevada, in and for the county of Elko, in an action wherein Henderson Banking Company Mortgage Corporation, a corporation, and Reconstruction Finance Corporation, a corporation, were plaintiffs, and John Leland Hylton et ux. were defendants. The action was brought to foreclose a mortgage, and the property involved included 1,000 head of sheep mentioned in the alleged oral contract upon which this proceeding is based. W. A. Reinken qualified as such receiver on the 31st day of July 1934, and took into his possession the said sheep. On the 7th day of August 1934 J. Leland Hylton, one of the plaintiffs in the court below and the appellant here, filed in the United States district court for the district of Nevada his voluntary petition in bankruptcy. On August 10, 1934, said Hylton was adjudicated a bankrupt, and the usual order of reference was made. Blanche Howell was, on the 1st day of September 1934, elected trustee, and duly qualified, and was such trustee during the time involved in these proceedings. On November 24, 1934, J. Leland Hylton, hereinafter referred to as plaintiff, filed an action in the Fourth judicial district court alleging, in paragraph III, as follows: "That on or about the 16th day of September, 1934, at and in Elko County, Nevada, defendant herein, as Receiver aforesaid, entered into an oral agreement with plaintiff, wherein it was agreed by plaintiff and defendant that plaintiff should execute his certain Emergency Livestock Agreement with the Secretary of Agriculture of the United States of America, to the end that plaintiff, with the consent of said defendant, might sell to the Secretary of Agriculture about 1000

ewes for the sum of $2.00 per head, and that said defendant should receive from such proceeds the sum of $1.00 per head, and that plaintiff should receive from such proceeds the sum of $1.00 per head, and that plaintiff should pay to said defendant the sum of fifteen cents per head for all ewes thus sold to the Secretary of Agriculture under said agreement."

Later, defendant filed his answer, wherein two affirmative defenses were set up, as follows:

(Second affirmative defense).

"That said plaintiff above-named, on or about the 7th day of August, 1934, filed his verified petition with the Clerk of the District Court of the United States, for the District of Nevada, entitled in said Court: 'In the Matter of John Leland Hylton, Bankrupt. In Bankruptcy, No. 535,' under Section 4 of an Act of Congress of the United States of America, approved July 1, 1898, as amended [11 U. S. C. A., sec. 22], praying that he, the said plaintiff herein, be duly adjudged a voluntary bankrupt, and that in pursuance of said petition said plaintiff was duly adjudged a voluntary bankrupt on the 10th day of August, 1934, and that he was not discharged as a bankrupt in such proceedings until the 7th day of November, 1934; and that by reason thereof, the said plaintiff was, on the 16th day of September, 1934, and at all times between the 10th day of August and the 7th day of November, 1934, a bankrupt, and as such bankrupt and by reason of the said adjudication as such, your defendant is informed and believes, and upon such information and belief alleges the fact to be, divested himself of all right, title, interest and equity of every nature, kind and description whatsoever, in and to the sheep mentioned and described in said complaint, said plaintiff having claimed to be the owner of said sheep at the time he filed his petition in bankruptcy aforesaid, and at the time he was adjudged a bankrupt as aforesaid; that on the 1st day of September, 1934, Blanche Howell, of the County of Elko, State

of Nevada, was elected Trustee in said matter of John Leland Hylton, Bankrupt, and thereupon duly qualified as required by law, and has been ever since said time and is now the duly elected, qualified and acting Trustee in Bankruptcy in said matter; that by reason of such proceedings and his status as a bankrupt on or about the 16th day of September, 1934, said plaintiff, so defendant is informed and believes, and, therefore, alleges the fact to be, did not have any legal right, power, capacity, and/or authority to contract with said defendant with reference to any sale, and/or the alleged agreement for the sale of the sheep mentioned and described in the complaint of plaintiff, and that by reason thereof the agreement mentioned and described in said complaint of plaintiff as having been entered into between plaintiff and defendant, if entered into, would, so defendant has been informed, and believes, and, therefore, alleges the fact to be, have been and is void and of no force or effect and unenforceable against additional allegations:

The third affirmative defense contained the following. additional allegations:

"That the estate of said bankrupt has never been settled, and the same is now pending in the District Court of the United States, for the District of Nevada, and that claims for creditors filed against the estate of said bankrupt have never been paid or discharged; that by reason thereof, and the matters and things hereinabove, sea forth, said plaintiff, so defendant is informed and believes, and, therefore, states the fact to be, neither on or about the 16th day of September, 1934, or at any time alleged in his complaint, had or does now have any interest, right, title or equity in and to the sheep mentioned and described in the said complaint as the subject of the alleged oral agreement mentioned and described in the said complaint, but that on the contrary all of the right, title, interest, and/or equity which the said plaintiff may have owned, had or enjoyed in and to said property became and is vested in the trustee in bankruptcy

in said proceedings by operation of law from and after the said 10th day of August, 1934, the date upon which said plaintiff was adjudged a bankrupt, as aforesaid, subject, however, to the interest, equity, right of possession and sale of defendant herein as Receiver in said Action No. 4351; and that by reason thereof said plaintiff has not the legal capacity to sue, and/or commence, and/or prosecute this action, having, so your defendant is informed and believes, and, therefore, states the fact to be, no right, title, interest, and/or equity in and to said sheep, since the said 10th day of August, 1934, and/or the right, and/or power, and/or capacity to contract with reference thereto at the times mentioned and described in said complaint of plaintiff with reference to the making of said alleged agreement with defendant, and that by reason thereof said plaintiff is not the real party in interest as provided for and contemplated by Section 8543, N. C. L. 1929; that by reason of the foregoing facts, and particularly the fact that said plaintiff was duly adjudged a bankrupt in said proceedings on the 10th day of August, 1934, and was and remained such bankrupt until the 7th day of November, 1934, all of the right, title, interest and equity which said plaintiff may have had in and to said sheep mentioned and described in said complaint became vested in the trustee in bankruptcy in said proceedings, so defendant is informed and believes, and, therefore, states the fact to be, by operation of law, and that by such operation of law said plaintiff was without right, power, capacity, and/or authority to contract with reference to said sheep on or about the 16th day of September, 1934, and/or at any time after the said 10th day of August, 1934, up to and including the present time."

Plaintiff demurred to the affirmative defenses and moved to have them stricken. The trial court overruled the demurrer and denied the motion to strike. Plaintiff declined to reply or otherwise plead to said answer, and the court entered judgment on the pleadings. Plaintiff has appealed from that judgment.

Plaintiff conceives a solution of the issues in this case to be contained in a negative answer to the following questions: "Was the right which the Government, on September 4, 1934, gave to a person as the 'producer' to receive certain benefit payments such an asset or such a property or property right as passed to the trustee in bankruptcy on August 7, 1934?" We are not persuaded that such is the correct conclusion to be reached.

Under the emergency livestock agreement with the department of agriculture, which the plaintiff attempted to execute, he was required to and did represent and warrant:

"Representations and Warranties:

"The producer represents:

"(a) That he is operating the ranch or farm described on the reverse hereof.

"(b) That he has owned and been in possession of the livestock described in table 1 since April 1, 1934.

"(c) That he has the right to sell such animals."

No ranch or farm is mentioned or described on the reverse side of said agreement; and because of the bankruptcy proceedings plaintiff had been divested of the title to the sheep in question, by operation of law, and he no longer owned or was in possession thereof.

Section 70 of the United States bankruptcy act, 11 U. S. C. A. sec. 110, specifically designates the property which vests in a trustee in bankruptcy upon his qualifying. Subdivision á(5) reads: "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him."

Upon the filing of the said petition in bankruptcy, plaintiff parted with all legal title to and right of posession of the sheep. This was prior to the time plaintiff entered into the contract with the said receiver for the sale of the sheep. See 11 U. S. C. A. sec. 101 to end, Bankruptcy, page 490, note 70: "Subdivision (5) is clearly the most comprehensive clause of paragraph (a)

of this section, and the decisions thereunder are unanimous to the effect that this clause means precisely what its language imports, namely, that the trustee in bankruptcy is vested, by operation of law, with the title of the bankrupt to all property which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against such bankrupt."

Also 7 C. J., page 114, article 187: "In addition to providing for the transfer of title to particular classes of property, the Bankruptcy Act, in general terms, vests the trustee with title to all property which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. Accordingly the title of the trustee is not limited to property which belongs absolutely to the bankrupt, but also extends to property which, by reason of state statutes, is considered as belonging to him as far as the rights of his creditors are concerned, or in which he has a transferable interest." 8 C. J. S., Bankruptcy, sec. 169.

Plaintiff stresses the proposition that property acquired after the bankruptcy proceedings does not pass to the trustee, as is also the case with certain rights or privileges which are purely personal to the bankrupt, as, in this instance, the status of plaintiff as a producer. We agree that at the time of the adjudication of plaintiff as a bankrupt and of the passing of the legal title to the sheep to the trustee, the rights which plaintiff may have been given under the agricultural adjustment act, 7 U. S. C. A. sec. 601 et seq., as a producer did not pass. But it seems also apparent that when the title to the sheep did pass to the trustee, such a situation left the plaintiff's rights as a producer drained of all opportunity to realize thereon, either by said producer or any other person. It is our construction of the terms of the agricultural adjustment act that in order to possess the right to contract with the government

thereunder two things must coexist in the seller, namely; Ownership and the status of producer. The situation existing at the time of the enactment of the agricultural adjustment act was such that in many instances livestock were mortgaged for a greater amount than could ordinarily be realized from a sale thereof, hence the government provided a fixed amount for the producer, in order that he might continue in business. The government purchased livestock in order to benefit the producer, but in the instant case the producer, having, before the contemplated sale, divested himself of title, how could he sell to the government or anyone else? Being adjudged a bankrupt placed the plaintiff in the same position in relation to the ownership of the sheep as if he had sold to a third party. Such being the case, it seems obvious that if A produces a thousand head of sheep and sells said sheep to B, that A is then in no position to again sell said sheep to C, in order to receive certain benefits, because if C makes the purchase he can neither receive title or possession. So in this case Hylton, the producer, because of the bankruptcy proceeding, was in no position to deliver to the government either title or possession. Being thus unable to deliver either title or possession, he was incapable of contracting for the sale of the sheep.

The second and third separate affirmative defenses state a complete bar to a recovery by plaintiff, and the plaintiff having refused to plead to the said defenses, they must be deemed admitted, and the trial court was correct in entering judgment on the pleadings.

The said judgment is hereby affirmed.